IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:12-cv-01126-MSK-KMT

LEANNE SLOAN,

Plaintiff,

v.

AMERISTAR CASINOS, INC. and AMERISTAR CASINO BLACK HAWK, INC.,

Defendants.

---

**DEFENDANTS' FED.R.CIV.P. 72(b) OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER OF FEBRUARY 26, 2013**

---

Defendants Ameristar Casinos, Inc. and Ameristar Casino Black Hawk, Inc. (collectively, "Ameristar") respectfully submit these Objections to the Magistrate Judge's Minute Order of February 26, 2013 ("Order") (Doc. No. 68), pursuant to Rule 72(b) of the Federal Rules of Civil Procedure.

## Certificate of Compliance with D.C.COLO.LCivR 7.1(A)

Undersigned counsel for Ameristar hereby certifies that he has conferred with counsel for Plaintiff. Plaintiff opposes the relief requested.

## INTRODUCTION

The Order — which imposes a prohibitory injunction, and two mandatory injunctions — goes beyond this Court's reference to the magistrate judge, beyond the magistrate judge's

authority, violates constitutional and statutory guarantees, and is unsupported by the factual record. This Court should vacate (or as described below, modify) the injunctions, including the monetary penalty, unlawful and beyond the magistrate judge's authority.[1] In support of this relief, Ameristar states as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

This is a putative collective action on behalf of present or former Ameristar casino hosts under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

On September 21, 2012, the Plaintiff filed a motion seeking conditional certification of a collective action. (Doc. No. 38.) The Court referred that motion to Magistrate Judge Tafoya on September 24, 2012. (Doc. No. 39.) Ameristar did not oppose the conditional certification, but did raise several objections to the proposed notice to the putative collective action members. (Doc. No. 51, pp. 2-5.)

On November 7, 2012, the magistrate judge held a hearing concerning the collective action certification motion and the proposed notice, at the end of which she orally conditionally certified the collective action. (Doc. No. 59.) By a written order issued November 13, 2012, the magistrate judge confirmed the conditional certification of the collective action and authorized a form of the collective action notice. (Doc. No. 58, pp. 1-2.) Nothing in either the November 7

---

[1] While Ameristar believes the magistrate judge did not have authority to issue an injunction, Ameristar plans to file a Notice of Appeal with the Tenth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(a)(1), which provides for immediate appellate review of injunctions, to preserve its appellate rights if it were somehow determined that the magistrate judge had jurisdiction to enter an injunction, notwithstanding 28 U.S.C. § 636(b)(1)(A). *See also Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1148 (10th Cir. 2011) (orders granting injunctions are among the types of interlocutory orders that are immediately appealable under 28 U.S.C. § 1292).

HRODEN\1643880.6

nearing or the November 13 order indicated that the magistrate judge had decreed that the collective action notice was the sole permissible form of communication or that the parties were otherwise prohibited from communicating with putative collective action members.  In fact, in a prior order, the magistrate judge had declined to restrict communications with putative collection action members. (Doc. No. 47, pp. 6 – 7.)

On November 14, Ameristar sent a letter by regular mail, signed by its president Larry Hodges (Doc. No. 60-1), to only 48 *former* Ameristar casino hosts.  (Doc. No. 67-1, p. 1, ¶ 4.) The letter was a partisan document intended to persuade the recipients not to opt into the collective action.  (Doc. No. 60-1, pp. 1, 3.)  The letter was *not* sent to current Ameristar casino hosts, and there is no evidence that any current Ameristar casino host was even aware of the letter, let alone that he or she was influenced by it.

On December 14, 2012, Plaintiff filed a motion for sanctions ("Sanctions Motion") against Ameristar based on the letter.  (Doc. No. 60.)  The Plaintiff attached no declarations, affidavits, or other evidence to the Sanctions Motion.  In the Sanctions Motion, the Plaintiff sought, among other things, an injunction against Ameristar.  (Doc. No. 60, p. 18 ("Plaintiff requests that the Court *enjoin* the Defendants and their representatives from making any ex-parte communications with absent class members regarding this action until the end of trial.") (emphasis added).

This Court referred the Sanctions Motion to the magistrate judge by a docket entry on December 17, 2012.  (Doc. No. 61.)  Because the Sanctions Motion sought injunctive relief, the referral was necessarily for a report and recommendation by the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(A) (forbidding referring motions seeking injunctions for decision by magistrate

judges); 28 U.S.C. § 636(b)(1)(B) (providing that a magistrate judge may submit proposed findings of fact and a recommended disposition of motions seeking injunctions). As it turned out, however, the magistrate judge proceeded as if she were authorized to actually decide the motion, authorized to issue injunctions, and authorized to impose monetary penalties beyond ordinary sanctions.

The parties briefed the Sanctions Motion on an expedited briefing schedule per a minute order from the magistrate judge also issued on December 17, 2012 (Doc. No. 62.)

On January 31, 2013, the magistrate judge issued another minute order directing the parties to call the magistrate judge's chambers and obtain dates for a half-day hearing on Sanctions Motion. (Doc. No. 65.) The January 31 minute order stated in part:

> The defendant SHALL HAVE PRESENT IN PERSON IN THIS COURT at the agreed upon date and time for the motions hearing, Larry Hodges, President and COO of Defendant entities. Mr. Hodges shall be prepared to respond under oath to questioning about the November 14, 2012 letter attached as Exhibit 1 to the Motion.

(Doc. No. 65.)

The hearing was set for February 26, 2013, and Mr. Hodges appeared as ordered. Before he even testified, however, or any evidence was presented by either side, the magistrate judge stated that the letter was "a violation of everything I think justice is supposed to resolve around," and was "underhanded and devious." (Tr., p. 3, ln. 10 – 11, 19.)[2] The magistrate judge would later characterize the letter as "telling" former employees that Ameristar would "torture them for the next two or three years," (Tr., p. 42, ln. 18), and "crush you if you join this case" (Tr., p. 53,

---

[2] Ameristar is attaching a complete copy of the sanctions hearing transcript for the Court's convenience as Exhibit A.

ln. 9 – 11), statements the letter does not make.

Mr. Hodges provided the only testimony at the hearing. Mr. Hodges testified that he was the originator of the idea to send the letter and that, while it was his intention to convince former Ameristar casino hosts to not participate in the collective action, he did not intend to coerce or otherwise improperly interfere with the magistrate judge's administration of the collective action. (Tr., p. 6, ln. 4 – 20, p. 10, ln. 3 – 24.)[3] The Plaintiff presented no evidence at the hearing beyond a cross-examination of Mr. Hodges – no witnesses, declarations, or other evidence.

After Mr. Hodges testified, and after hearing arguments by counsel, the magistrate judge identified her objections to the letter. The magistrate judge objected to the letter's statement that putative collective action members may be required to travel to Denver, at their expense, for depositions. (Tr., p. 50, ln. 7 – 19.) The magistrate judge believed that parties "more than 100 miles away" would not be required to travel to the District of Colorado for depositions. (Tr., p. 50, ln. 19.)

This was an error by the magistrate judge. In federal court, "the general rule is that a Plaintiff may be deposed in the judicial district where the action is brought." *Peiker Acustic, Inc. v. Kennedy*, Civ. Act. No. 10-cv-02083, 2011 U.S. Dist. LEXIS 40549, *4-5 (D. Colo. Apr. 8,

---

[3] The magistrate judge's comments in the hearing suggested that she erroneously believed *any* attempt to influence putative collective action members' participation would be improper. (Tr., p. 45, ln. 2 – 7, 15 – 17.) That is not the standard, as courts have recognized that defendant employers have not only the right to communicate with putative collective action members, but may even solicit affidavits from them concerning the litigation, a clearly partisan act. *See Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 526 (D. Md. 2011). Rather, in evaluating whether a communication is "coercive," the "test for coercion is whether the conduct somehow overpowers the free will or business judgment of the potential class members." *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, Civ. No. 07CV929, 2012 U.S. Dist. LEXIS 125596, *8 (D. Conn. Sept. 25, 2012).

2011). Though the magistrate judge would have the power to disregard this "general rule" in favor of collective action members, she had not told Ameristar before it sent the letter that she intended to do so. Accordingly, Ameristar had no notice that the magistrate judge would object to Ameristar's truthfully notifying putative collective action members that they may be required to travel to Denver for their depositions.

The magistrate judge's error in this regard may stem from her belief that FLSA collective action members are "not going to be named plaintiffs in the case" and are "part of a class." (Tr., p. 67, ln. 17 – 18.) In fact, persons who opt in to FLSA collective actions are "party plaintiffs," not absent class members. *See* 29 U.S.C. § 261(b) (providing that no employee may become a "party plaintiff" in a FLSA action without opting in); *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) (holding that opt-in plaintiffs are "full-fledged plaintiffs" with the "same status" as the originally named plaintiffs). However, there are *no* F.R.C.P. 23 class allegations in Plaintiff's First Amended Complaint. As this Court has recognized, FLSA collective actions are procedurally distinct from F.R.C.P. 23 class actions. *See Melonakis-Kurz v. Heartland Home Fin., Inc.*, Case No. 03-cv-2485, 2005 U.S. Dist. LEXIS 47729, *5 & *10-11 (D. Colo. June 27, 2005). This distinction is critically important in the context of the propriety of communications with putative collective action members versus putative class action members. *See Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002), *rev'd in part on other grounds by* 240 Fed. Appx. 172, 2007 U.S. App. LEXIS 11253 (9th Cir. 2007). As explained further below, the magistrate judge's apparent confusion between the status of opt-in plaintiffs and absent class members was general, ran throughout her reasoning, and prejudicially affected her consideration of the issues before her.

The magistrate judge next objected to Ameristar's truthfully stating that Plaintiff is "alleging sex and age discrimination as well as the Fair Labor Standards Act[.]" (Tr., p. 64, ln. 19 – 21.) According to the magistrate judge, only the FLSA claim is "really before these putative plaintiffs," and so the reference to the other claims in the action was "done to establish that the plaintiff is somehow less desirable for association with the putative class members." (Tr., p. 64, ln. 23 – 25.) [4]

This was also legal error by the magistrate judge. An opt-in FLSA plaintiff joins the entire action, not just specific claims in it. *See Prickett*, 349 F.3d at 1297 ("[The] plain language [of the FLSA] indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole."). Possible collective action members should be truthfully informed as to the scope of the "action" they are being asked to join as "party plaintiffs."

The magistrate judge also objected to Ameristar's statement — truthful, in Ameristar's view — that Plaintiff may want others to join her action to reduce her potential risk in the event costs are awarded against her. (Tr., p. 65, ln. 10 – 16.) Without taking evidence from Plaintiff on the question, the magistrate judge thought this statement was "blatantly untrue," solely because Plaintiff had rejected an earlier settlement offer. (Tr., p. 65, ln. 11 – 16.)

But the magistrate judge confused two different issues: Plaintiff's desire for upside gain (her potential recovery by judgment or settlement) and her desire for downside protection (her

---

[4] The magistrate judge never explained her view that persons who bring civil rights claims are generally viewed by others as "less desirable" or as "that kind of person" with whom others might not want to associate. (Tr., pp. 64 – 65, ln. 24 – 25, 1 – 2).

HRODEN\1643880.6

ability to spread the risk of a negative result among multiple fellow party plaintiffs).  Plaintiff

may well value her claims at more than the settlement offer — in which case she would logically

reject it — but still want to reduce her risk if her claims go bad.  Indeed, the more Plaintiff can

reduce her downside risk by having others potentially liable for an adverse cost award, the

greater the value of her claims is to her.  The magistrate judge's apparent view that a party who

rejects a settlement offer is therefore heedless of the costs and risks of litigation is contrary to

human nature and the ordinary experience of those who handle private lawsuits.  Ameristar's

statement about Plaintiff's possible motivation is much more realistic than the magistrate judge's

view.

Next, the magistrate judge objected to Ameristar's truthful statements that it "intend[s] to

win" the case, that it will "vigorously defend" the case, and that the "costs of defense are

substantial."  (Tr., p. 65, ln. 20 – 22.)  The magistrate judge's objection to these truthful

statements appears to stem from her belief that opt-in plaintiffs are not "party plaintiffs," and so

will not incur significant expense or time in litigating an action against a determined opponent.

(Tr., p. 67, ln. 12 – 18.)  Again, this was a legal error by the magistrate judge, which heavily

affected her impressions of the letter.  *See* 29 U.S.C. § 216(b); *Prickett*, 349 F.3d at 1297.

The magistrate judge also objected to the letter's statement that, if Plaintiff prevails, the

host position will be classified as an hourly position.  The magistrate judge believed that the

letter implied that "an hourly wage makes a job unimportant, makes it clerical" and that people

who hold such jobs are "unprofessional."  (Tr., pp. 66 – 67, ln. 13 – 14, 1 – 2.)  But Ameristar's

statements were truthful: if a job pays an hourly wage with possible overtime, then employees

with that job will "punch a time clock," because no employer is going to pay by the hour —

subject to the obligation to pay overtime — without keeping track of those hours.  And the host position is hourly only if it not a "bona fide executive, administrative, or professional" job.  *See* 29 U.S.C. § 213(a)(1).

The magistrate judge's inference that hourly jobs are "unimportant" was another error. The issue under the FLSA is not the importance of the job, but rather whether the job is a "bona fide executive, administrative, or professional" job.  *See* 29 U.S.C. § 213(a)(1).  Though the magistrate judge objected to Ameristar's observation that host jobs are salaried if hosts "use significant judgment and discretion" as not being "what the law says," in fact the applicable regulation provides that positions are administrative if they involve the "exercise of discretion and independent judgment with respect to matters of significance."  *See* 29 C.F.R. § 541.200(a)(3).  (The other requirements of the regulation are not at issue in this case.)  If anything, Ameristar tilted the playing field in Plaintiff's direction by stating that "significant judgment and discretion" is required for the host position to be hourly.

Finally, the magistrate judge objected that the letter "basically says" that "if you join" the lawsuit "it's Ameristar against you."  (Tr., p. 68, ln. 6 – 8.)  But that is a self-evidently true statement – litigation is an adversarial process.

At the end of the hearing, based on her views of the letter, the magistrate judge purported to impose a number of sanctions on Ameristar.  (Tr., pp. 69 – 82, 84.)  In particular, the magistrate judge "enjoined" Ameristar "from having any ex parte communications with any absent class members [sic], employees or non-employees, regarding this action until the end of this litigation," an express prohibitory injunction.  (Doc. No. 68, p. 3.)  The magistrate judge further issued two implicit mandatory injunctions.  The first directed Ameristar's president, Mr.

Hodges, to "sign" a "letter of apology" "drafted by Plaintiff's counsel." (Doc. No. 68, p. 2.) *See Rumbles v. Hill*, 182 F.3d 1064, 1066 (9th Cir. 1999) (characterizing a request for a letter of apology as "injunctive-type relief"); *see also Devonish v. Atlantic County Justice Facility*, Civ .Act. 10-1866, 2010 U.S. Dist. LEXIS 77118, *8-9 (D.N.J. July 29, 2010) (discussing "Application for Injunctive Relief Directing Apology"). The second ordered Ameristar to pay $480,000 to the registry of the Court, which would be "released to the Plaintiff" "in the event of a Plaintiff victory." (Doc. No. 68, p. 4.)

The magistrate judge further directed that a corrective notice be sent, extended the opt-in period, and awarded Plaintiff's counsel certain costs and fees. (Doc. No. 68, pp. 2 – 3.) Finally, the magistrate judge order Ameristar to disclose any other oral or written communications with putative collective action members.

The magistrate judge left no doubt that she believed herself empowered to actually decide the various requests for injunctive relief, and to impose other penalties. (*See, e.g.*, Tr., p. 75, ln. 21 – 22 ("Defendants are their representatives are hereby enjoined . . . ."); *id.*, p. 76, ln. 5 – 9 ("[D]efendants and their representatives are enjoined from ex parte communications with all these putative class members [sic] on the contents and general underlying conditions in this lawsuit. So you can't talk to them about the lawsuit, period, none."); *id.*, p. 78, ln. 5 – 6 ("I want you to understand that these are orders of the Court.").) The magistrate judge further stated that this Court's review of her orders would be "subject to a standard of clearly erroneous and contrary to law[.]" (Tr., p. 84, ln. 20 – 22.)

The magistrate judge imposed the injunctions and sanctions in open court on February 26, 2013. A written minute order imposing the injunctions and sanctions was also issued. (Doc.

No. 68.)  The written order bears a filing date of February 26, 2013, but was not actually entered on the Court's CM/ECF system, or received by Ameristar, until three days later, on March 1, 2013.

These objections followed.

## ARGUMENT

Ameristar was entitled to communicate appropriately with putative collective action members, and the letter was not coercive or otherwise improper.  *See Stransky v. Healthone of Denver, Inc.*, Civ. Act. No. 11-cv-02888, 2013 U.S. Dist. LEXIS 31603, *8-9 (D. Colo. Mar. 7, 2013);[5] *see also Ross*, 799 F. Supp. 2d at 526 (stating that an employer generally has the right to "appropriately communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit.") (brackets omitted) (quoting *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1225-26 (S.D. Ala. 2008) and citing *Parks*, 235 F. Supp. 2d at 1085).  The magistrate judge's contrary view of the letter was based on her misunderstanding of the legal framework of this FLSA case.  Ameristar thus objects

---

[5] The magistrate judge entered her Order in this case without the benefit of Judge Martinez's guidance in *Stransky*.  Given the dramatic disparity between the sanctions ordered by the magistrate judge in this case (where the alleged coercion was a single letter directed at *former* employees) and Judge Martinez in *Stransky* (where the alleged coercion was in-person meetings with *current* employees, *i.e.*, those individuals normally considered to be at greater risk of coercion in an FLSA case), Ameristar would urge the Court to look particularly closely at the magistrate judge's Order in light of *Stransky*.  The Court in *Stransky* found appropriate remedial measures were limited to an award of attorney fees and costs, and a corrective notice; it also limited the requested prohibition on communications with putative class members until after the opt-in period (not until the conclusion of litigation, as the magistrate judge did in the case at bar).  A copy of *Stransky* is attached as Exhibit B for the Court's convenience.

11

to the magistrate judge's conclusion that the letter was coercive or otherwise improper, and asks the Court to reject the fundamental basis for the magistrate judge's entire Sanctions Order.

More fundamentally, however, the magistrate judge went far beyond the reference, and far beyond her authority, in issuing the Sanctions Order. In particular, the magistrate judge has no power to issue prohibitory injunctions (the injunction against communications), and no power to enter mandatory injunctions (the injunction to sign an "apology letter" and deposit $480,000 to the registry of the Court for Plaintiff's benefit) here. The Order should therefore be vacated.

## I.     THE INJUNCTIONS MUST BE VACATED, BECAUSE THE MAGISTRATE JUDGE HAD NO POWER TO ISSUE INJUNCTIONS

The jurisdiction and powers of magistrate judges are defined by 28 U.S.C. § 636. *See Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461-62 (10th Cir. 1988). Under 28 U.S.C. § 636(b)(1)(A), a magistrate may "hear and determine any pretrial matter pending before the court, *except a motion for injunctive relief . . . .*" (Emphasis added.) Magistrate judges are therefore without power to enter injunctions against the parties appearing before them, unless those parties have consented to an exercise of the magistrate judge's powers under 28 U.S.C. § 636(c), which the parties to this case have not. *See United Steelworkers of Am. v. Bishop*, 598 F.2d 408, 411 (5th Cir. 1979) ("we are bound to note that a magistrate lacks power to enter an injunction even in a case where the district court has jurisdiction. . . . Magistrate Taylor did not have the power under 28 U.S.C. § 636 to enter the injunction in the contract case even if the district court could have entered it.").

Making matters worse, the magistrate judge's mandatory injunction directing an apology, striking as it does at the heart of the First Amendment, is probably beyond the power of even an

Article III judge. Case law overwhelmingly suggests that courts either conclude they have no power to order such an action, or otherwise prudentially refrain from treading into the perilous waters of compelled speech. *See Woodruff v. Ohman*, Case No. 99-6037, 2002 U.S. App. LEXIS 2087, **25-27, 29 Fed. Appx. 337, 346 (6th Cir. Feb. 6, 2002) ( "the district court exceeded its equitable power when it ordered [the defendant] to apologize. . . . Neither the district court nor [the plaintiff] cites to any authority, and we have found none, that would permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds."); *Rumbles*, 182 F.3d at 1066-67 ("The district court correctly held that it had no power to . . . compel a party to apologize"); *Kitchen v. Essex County Corr. Facility*, Civ. Act. No. 12-2199, 2012 U.S. Dist. LEXIS 77356, *10 (D.N.J. May 31, 2012) ("The remedy of 'apology,' however, is not cognizable, either within the meaning of a § 1983 action or as a general legal remedy that a court has the power to order, under any provision.") (collecting cases); *see also City of Minneapolis v. Richardson*, 239 N.W.2d 197, 206 (Minn. 1976) ("A letter of apology is not a proper means to effectuate any of these purposes. The writing of such a letter is calculated to humiliate and debase its writer and will succeed in producing only his resentment . . . ."). In Ameristar's view, the apology ordered is not appropriate or productive (especially where the magistrate judge has also ordered a corrective notice to be issued);[6] therefore, Ameristar is being

---

[6] *See* Doc. No. 68, p. 2. Courts generally recognize that a formal corrective notice is sufficient to address any prejudice caused by improper communication. *See Stransky*, 2013 U.S. Dist. LEXIS 31603 at *22-25 (collecting cases concerning corrective notices and discussing use of corrective notice to cure "misleading and confusing statements made by Defendant" to putative collective action members); *see also Bennett v. Advanced Cable Contractors, Inc.*, Civ. Act. No. 12-CV-115, 2012 U.S. Dist. LEXIS 63605, *33 (N.D. Ga. May 7, 2012) ("to the extent any pre-notice communications between Plaintiff's counsel's office and putative plaintiffs were false or misleading, as Defendants contend, the Court-approved notice will correct any

compelled to speak in a manner it disagrees with by this aspect of the Order.

The magistrate judge's order that Ameristar pay $480,000 to the registry of the Court is also a form of injunction, and thus beyond her authority. While monetary sanctions are not typically considered injunctions, the precise terms of the Order here make the sanction injunctive in nature. Specifically, the Order is not intended as a means for Ameristar to pay compensation for Plaintiff's attorney fees or other costs already incurred, but rather it decrees that if Plaintiff prevails on her claims at trial, she will be awarded the $480,000 as a pure windfall, while if Ameristar prevails, any cost award it is entitled to will be charged against the $480,000 fund first, with any balance returned to it. (Doc. No. 68, p. 4.) An order that requires a defendant to effectively *prefund* a judgment against it pending resolution of the case is injunctive in nature. *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 44, 46-47 (1st Cir. 1986) (holding that an order which directed a defendant to escrow funds "to satisfy any judgment or arbitration award" that might eventually be received by the plaintiff was a form of injunction). Therefore, it was beyond the Magistrate Judge's authority.

The monetary penalty is also problematic because, to the extent it insulates Plaintiff (and other putative collective action members who might join the case) from a cost award to Ameristar in the event of a defense victory, it has the effect of actively encouraging individuals to join a lawsuit they might not otherwise join by providing them special protections not afforded to them if they chose to litigate against Ameristar individually.[7] This is contrary to the principle

---

falsehoods or misstatements").

[7] While the magistrate judge did not specifically reference "incentives" in the Order, Plaintiff expressly stated in her Sanctions Motion that her reason for requesting the monetary penalty was to create an "incentive for class members to join" the case. (Doc. No. 60, p. 16.)

that, in managing a collective action, "courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 174 (1989).

In any event, this Court's order of reference did not, and could not, actually authorize the magistrate judge to decide the request for injunctive relief. Because the magistrate judge did so anyway, and actually issued injunctions, the Order is "contrary to law" under 28 U.S.C. § 636, and must be vacated under Rule 72.

Furthermore, even if the magistrate judge was empowered to issue injunctions, the scope of the prohibitory injunction is overbroad and should be narrowed. The magistrate judge enjoined Ameristar from having any *ex parte* communications with putative collective action members concerning the case "until the end of this litigation." (Doc. No. 68, p. 3.) But such a lengthy injunction will be highly disruptive to discovery, trial preparation, and trial by prohibiting Ameristar from interviewing or otherwise communicating with present or former casino hosts who could be witnesses in the case. As the Supreme Court explained in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981):

> An order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing—identifying the potential abuses being addressed—*should result in a carefully drawn order that limits speech as little as possible*, consistent with the rights of the parties under the circumstances.

---

Plaintiff's counsel again urged the magistrate judge during the sanctions hearing "to create an incentive to -- to allow people to opt-in, to pursue their rights." (Tr., p. 63, ln. 16 – 17.)

(Emphasis added.)

Notably, in the February 26, 2013 hearing, the magistrate judge even cited the *Gulf Oil* case, to say that she has "broad discretion to limit communications" between Ameristar and putative collective action members. (Tr., p. 74, ln. 7 – 9.) But *Gulf Oil* (and cases following it) instead *minimizes* the limitations a court may impose on communication with putative class members. *See, e.g.*, *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986) (district court's order monitoring all oral and written communications to putative class members was challenged and reduced to cover only written communications); *see also Stransky*, 2013 U.S. Dist. LEXIS 31603 at *8 ("If a court issues an order limiting communications between parties and potential class members . . . [a]ny such restrictive order must be narrowly tailored to avoid impinging upon the parties' constitutional rights of free speech and association.") (quotation marks and citations omitted) (quoting *Gulf Oil*, 452 U.S. at 101-02).

Most relevantly, the Supreme Court in *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989), applying *Gulf Oil* in the collective action context, held that a court's interest in regulating communications with putative collective action members was based on assuring that the putative collective action members receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate," and otherwise preventing "misleading communications" that disrupt the collective action. The Supreme Court did not indicate that there is any justifiable interest to be protected by restraining communications with *former* putative collective action members, *i.e.*, those

HRODEN\1643880.6

persons who chose not to opt into the collective action, or individuals outside the scope of the collective action definition.

Thus, even uncritically accepting the magistrate judge's characterizations of the effect of the letter on collective action participation, Ameristar should be free to conduct *ex parte* witness interviews and otherwise communicate with current or former Ameristar casino hosts who elect not to join the collective action for purposes of collecting information to assist its defense. *See Stransky*, 2013 U.S. Dist. LEXIS 31603 at *23 ("Therefore, in order to prevent Defendant from making further misleading and confusing statements to Opt-in Plaintiffs, the Court orders that Defendant may not communicate further with Opt-in Plaintiffs about this case and the claims or defenses in this action *until after the opt-in period has closed*.") (emphasis added); *see also Ross*, 799 F. Supp. 2d at 526 (employer may communicate with "unrepresented prospective class members . . . even to solicit affidavits from them concerning the subject matter of the suit.") (citations omitted).

Accordingly, both the prohibitory injunction and the mandatory injunctions issued by the magistrate judge should be vacated. Or, in the case of the prohibitory injunction, at minimum, modified to conform to the more limited scope contemplated by the interests the Supreme Court identified in *Sperling*, and very recently reconfirmed by Judge Martinez in *Stransky*, *i.e.*, restraining Ameristar from communicating *ex parte* with putative collective action members only through any additional opt-in period and then allowing Ameristar unsupervised communications with individuals who elect not to join the collective action.

**II.** **IF THE $480,000 PENALTY IS NOT DEEMED INJUNCTIVE, IT MUST BE VACATED AS AN IMPROPERLY IMPOSED CRIMINAL CONTEMPT SANCTION**

Ameristar presumes that the magistrate judge did not intend to impose criminal contempt penalties against it, as her only reference to "contempt" in the Order was prospective in nature (Doc. No. 68, p. 4) and she did not comply with the procedural requirements of Fed. R. Crim. P. 42. However, if the $480,000 is not deemed to be injunctive in nature, then under Tenth Circuit law it would appear to be a criminal contempt sanction and must be vacated due to a lack of authority for the sanction and failure to give Ameristar due process.

**A.** **A Fine That Is Neither Compensatory Nor Coercive Is A Form Of Criminal Contempt Penalty**

In *Law v. NCAA*, 134 F.3d 1438 (10th Cir. 1998), the Tenth Circuit made clear that in determining whether a court is imposing a "sanction," "civil contempt," or "criminal contempt," the superficial name applied is irrelevant. The focus is instead on what the nature of the penalty is. *See id.* at 1441-42 (concluding that although the district court "clearly intended to impose the sanctions under Rule 37" concerning discovery disputes, monetary penalty that was in excess of movant's attorney fees and costs was a form of criminal contempt sanction); *see also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004).

A sanction is in the nature of a criminal contempt sanction where a party is ordered to pay a penalty, whether to the court or to another party, that is "neither compensatory nor . . . avoidable by complying with the court's order." *Law*, 134 F.3d at 1443; *see also Mellon v. Cessna Aircraft Co.*, No. 99-3292, 2000 U.S. App. LEXIS 21640, *33 (10th Cir. Aug. 25, 2000) ("Where a fine is not compensatory, it is civil *only if the contemnor is afforded an opportunity to purge.*") (citation omitted; emphasis added). The fact that a penalty is to be paid to an opposing

party, rather than retained by the Court, does not remove the punitive nature of an otherwise noncompensatory penalty. *See Law*, 134 F.3d at 1442-43 ("[W]e believe the district court could not make a noncompensatory fine civil simply by requiring it to be paid to the complainant instead of to the court.").

As noted earlier, the $480,000 penalty assessed by the magistrate judge is expressly not intended to compensate Plaintiff for any actual out-of-pocket expenses she either has suffered or may suffer in the future. (Doc. No. 68, p. 4.) Rather, Plaintiff is to be awarded the $480,000 as a pure windfall in the event she prevails on seemingly any one of her claims against Ameristar.[8] (*Id.*) The $480,000 is likewise not coercive, as, even if Ameristar prevails at trial, its costs are to be charged against the funds in the registry of the Court. (*Id.*) Thus, it is impossible under any circumstances for Ameristar to wholly avoid the penalty. *See* 134 F.3d at 1443 ("Courts have upheld as civil fines intended to coerce, *as long as the offending party can avoid them by complying with the court's order*.") (citation omitted; emphasis added); *see also Mellon*, 2000 U.S. App. LEXIS 21640 at *33.

### B.     A Magistrate Judge's Authority To Impose Criminal Contempt Penalties Is Limited

A magistrate judge's authority to impose criminal contempt penalties is created by 28 U.S.C. § 636(e), and is quite narrow. A magistrate judge has no authority to impose criminal contempt sanctions for indirect criminal contempt (contempt occurring outside the presence of the magistrate judge) unless the parties have consented for the case to proceed before the magistrate judge or the action is a misdemeanor case. *See* 28 U.S.C. § 636(e)(3). Here, it is

---

[8] Plaintiff alleges nine different claims for relief in her First Amended Complaint, only two of which are FLSA related. (Doc. No. 31, pp. 11-18.)

undisputed that the letter was sent to putative collective action members outside the presence of the magistrate judge. Thus, assuming that it could be deemed a form of contempt at all (a position Ameristar strongly disputes), it was indirect contempt and was beyond the magistrate judge's power to even rule upon. Furthermore, imposition of sanctions for indirect criminal contempt necessitates elaborate procedural protections that were plainly not followed here. *See* Fed. R. Crim. P. 42(a). Failure to follow proper procedures for imposing criminal contempt sanctions mandates any such sanction be vacated. *See Mellon*, 2000 U.S. App. LEXIS 21640 at *36-37. Thus, even if the $480,000 penalty is not deemed to be injunctive nature, the only alternative is that it is an improper criminal contempt penalty that must be vacated.

## CONCLUSION

Ameristar acknowledges a difference in opinion with the Magistrate Judge as to the intent and tenor of the letter at the heart of the Sanctions Motion. Regardless of that difference in opinion, however, the sanctions imposed as a result of Ameristar's letter must be vacated (or modified, as explained above). Even accepting the magistrate judge's conclusions about the letter, it is clear that the magistrate judge exceeded the scope of her authority. Therefore, at a minimum, those parts of the Sanctions Order that constitute injunctive relief (the injunction on communications with putative collective action members, the letter of apology, and the $480,000 penalty) or criminal contempt should be vacated or heavily modified, and Ameristar would urge the District Court to vacate the entire Sanctions Order.

WHEREFORE, Defendants Ameristar Casinos, Inc. and Ameristar Casino Black Hawk, Inc. respectfully object to the magistrate judge's Minute Order of February 26, 2013 (Doc. No. 68) and request that this Court vacate the Minute Order.

HRODEN\1643880.6

Respectfully submitted this 12th day of March, 2013.

s/Michael J. Hofmann
Michael J. Hofmann
Stephen D. Rynerson
BRYAN CAVE HRO
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
Telephone:      (303) 861-7000
Facsimile:      (303) 866-0200
Email:          michael.hofmann@bryancave.com
                stephen.rynerson@bryancave.com
ATTORNEYS FOR DEFENDANTS

HRODEN\1643880.6

## CERTIFICATE OF SERVICE

I hereby certify that on March 12th, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Theresa L. Corrada | David B. Seserman |
| Juli E. Lapin | Chad M. Lieberman |
| Lapin │ Lapin, P.C. | Brosseau Bartlett Seserman, LLC |
| 1775 Sherman Street, Suite 1445 | 6455 S. Yosemite Street, Suite 750 |
| Denver, Co 80203 | Greenwood Village, CO 80111 |
| tcorrada@lawlapin.com | dseserman@bbs-legal.com |
| juli@lawlapin.com | clieberman@bbs-legal.com |

*s/ Michael J. Hofmann*

Michael J. Hofmann
BRYAN CAVE HRO

HRODEN\1643880.6