IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 12–cv–01126–KMT-RM

LEANNE SLOAN, individually and on behalf of others similarly situated,

    Plaintiff,

v.

AMERISTAR CASINOS, INC., and
AMERISTAR CASINO BLACK HAWK, INC.,

    Defendants.

---

# ORDER

---

This matter comes before the court on Plaintiff's "Motion to Compel and for Additional Sanctions Against Defendants for Coercion of Putative Collective Action Members." [Doc. No. 84.] This motion is a continuation of Plaintiffs allegations that the defendant corporations improperly influenced both current and former employees to abstain from joining Plaintiff's conditionally certified collective action. That this motion seeks sanctions for the same behavior, during the same time frame, as addressed by the court in the previous award of sanctions against Defendants (*see* Courtroom Minutes February 26, 2013 [Doc. No. 68], hereinafter "sanction order"), albeit directed at a different group of putative collective action members, must inform the court's ultimate decision.

The matter originally came before the court on Plaintiff's "Motion for Sanctions Against Defendants for Coercions of Putative Collective Action Members." [Doc. No. 60, filed December 14, 2012]. On February 26, 2013, after full briefing of the issues, this court held a

1

hearing and found that Defendants had sent a letter to former employees which was "misleading, coercive, and was a blatant attempt to undermine the purposes of a collective action." (Sanction order at 1.) The court further found that "Ameristar and counsel intentionally attempted to undermine the court-approved notice and intentionally intended to frighten and dissuade former employee putative class members from joining the class." *Id*. at 2. As a result, this court imposed a number of sanctions intended to ameliorate the coercive nature of the communications from Ameristar to former employees, including levying a $480,000.00 penalty against the Defendants to be deposited into the Court registry and to be distributed in a manner so as to mitigate the Defendants' threats against its former employees.

On March 18, 2013, this court stayed the full effect of its sanction order to allow District Court review before any further communications about the case were conveyed to already confused and misled putative collective members. [Doc. No. 77.] Because the court found "[c]ommunications by the Defendants to putative class members no longer employed by Ameristar was deceitful and designed to thwart the proper functioning of this lawsuit," this court limited communications between Defendants and all putative collective members, both past and present, to avoid further potential for abuse.[1] *Id*. at 5.

During the February 2013 hearing, the court also held

> Ameristar shall immediately disclose to the Court and to Plaintiff's counsel the rest of any and all oral and written communications to putative class members directly or through third-parties, including both current and former employees, regarding this lawsuit on or before March 12, 2013.

(Sanction order at 2.) On March 12, 2013, Ameristar filed "Defendants' Notice of Disclosure of Communications with Putative Collective Action Members," with four pages of disclosures.

---

[1] Early in the case the Ameristar defendants sought and received an Order from this court disallowing contact by Plaintiff's counsel with its currently employed casino hosts. [Doc. No. 36]. Defendants had the right to communicate with potential opt-in Plaintiffs, of course, as long as its communication was not misleading, coercive or improper. *Stransky v. Healthone of Denver, Inc.*, 929 F.Supp.2d 1100, 1109 -1110 (D.Colo. 2013).

[Doc. No. 71.]   On April 11, 2013, the plaintiff filed this instant motion requesting further sanctions as a result of allegedly misleading communications by Defendant corporations with current employees, also putative collective members.   Thereafter, Defendants filed "Defendants' Supplemental Notice Of Disclosure of Communications with Putative Collective Action Members" [Doc. No. 90, filed May 6, 2013] wherein Defendants additionally disclosed, in a twelve page document, a series of largely one-on-one meetings with casino hosts and their managers or supervisors which occurred during the fall and winter of 2012.

Ameristar's later disclosures demonstrate that the Defendants, at or near the time they successfully impeded Plaintiff's access to potential collective members, were conducting clearly suggestive one-on-one interviews between employees and their immediate supervisors and managers that were designed to mislead and coerce their current employees not to join Ms. Sloan's putative collective.   Similar behavior with respect to former employees during the same time period was addressed, of course, in the sanction order.

In *Stransky,* 929 F.Supp.2d at 1109 -1110, a FLSA collective action brought by employees seeking overtime pay, District Judge William J. Martínez held that unilateral communications by managers to their employees regarding the collective action is of "particular concern" as an employment relation exists between the parties, which itself may increase the risk that the communications will have a coercive effect.   *Id.*   Judge Martínez further held that mandatory meetings held at the place of employment by management carry the inherent possibility of coercion.   *Id.*

Although the court has not been made aware of the verbatim contents of the conversations Defendants' managers had with each employee, the paraphrasing provided by Defendants themselves in their disclosures showed that each communication was for the express purpose of

3

communicating about this case. In fact, because Ameristar admits that several Ameristar employees walked out of the meeting expressing anger at the way Ms. Sloan allegedly characterized the job of casino host, it is fair to infer that at least some of the managers were inflaming and inciting the putative collective members against Ms. Sloan personally with the express purpose of overriding the employee's own independent conclusions and decisions based upon the court's impartial notice of the lawsuit. [See Doc. No. 90-1 at 9, 10.] Again, based on Ameristar's own characterization of the meetings with employees, the following potential misstatements were made to casino hosts: if they joined the lawsuit and lost, they would be liable for Ameristar's defense costs; they would have to travel at their own expense and would be required to take unpaid time off of work to participate in the lawsuit; the plaintiff was a disgruntled former employee who claimed that the host position is a non-professional job that does not involve discretion or independent judgment (while adding at the same time that Ameristar believed hosts should be treated as valued professionals); if the Plaintiff prevailed, the nature of the position would change dramatically, the staffing would be different, and Ameristar would have to take the hosts' cell phones away from them; and, the more casino hosts get involved in the lawsuit, the more merit the case has. *Id.* Further, Ameristar referred to the court notice of the lawsuit as merely a letter from Plaintiff's counsel, which served to minimize the court-approved notice which was impartially drafted by the court and the parties' counsel during a lengthy in-court hearing.

This court agrees with Plaintiff, that during the relevant time period the Defendants, not surprisingly, used much of the same dishonest and coercive tactics in informing current employees of the pendency of the collective action as it did with respect to the former employees who received the threatening letter from Ameristar's Larry Hodges. Because the communiqué was delivered by the employee's current employer while at the workplace, the coercive nature of the

communications is even more forceful.

That said, however, this court must conclude that monetary sanctions in any amount greater than that already awarded in the sanction order would not be effective or useful for behavior and tactics already addressed by the court.   For the reasons stated on the record with respect to this court's prior ruling, the monetary sanctions previously awarded undercut, if not obliterated, Defendants' threats that collective plaintiffs will be liable for costs or attorneys' fees of Ameristar should the plaintiffs not prevail in the litigation and further ensures that should the plaintiff collective prevail – even with a reduced membership because of Defendants' wrongful actions -- a reasonable amount of monetary gain will inure to their benefit.

In addition, the court has already ordered that "[a] corrective notice will be drafted by Plaintiff's counsel and approved by the court. The notice shall then be sent to all putative class members."   If this court's sanction order is upheld by the District Court, the corrective notice will be sent to current and former casino hosts employed by Defendants, not just to those who received the Larry Hodges letter.

Altogether, although the Court reiterates that it finds the conduct engaged in by Defendants to have been deceitful, underhanded and designed specifically to thwart the proper functioning of the judicial system, there is no useful purpose to piling on additional sanctions for behavior that is part of a continuous pattern and which has previously been the subject of a sanction order.   This court concludes that the interests of justice would best be served by allowing District Court Judge Raymond P. Moore to review the defendants' behavior on the record as a whole and decide whether or not the sanctions already imposed by this court are justified, legally permissible and reasonable upon his review of the objections on file.

Therefore, it is **ORDERED**

Plaintiff's "Motion to Compel and for Additional Sanctions Against Defendants for Coercion of Putative Collective Action Members" [Doc. No. 84] is **DENIED.**

DATED this 8th day of October, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge